# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KAREEN HAYES,<br><br>Plaintiff,<br><br>v.<br><br>LAURA ELIZABETH FLEURY,<br><br>Defendant. | Case No. 22-CV-406-JPS<br><br>**ORDER** |

On November 17, 2021, Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging that Defendant violated his constitutional rights. ECF No. 1. On March 31, 2022, the case was transferred to this branch of the Court from the Western District of Wisconsin. ECF No. 20. On July 1, 2022, the Court screened Plaintiff's third amended complaint and allowed the following claims to proceed against Defendant Laura Elizabeth Fleury:

> **Claim One**: Eighth Amendment excessive force;
>
> **Claim Two**: State law intentional infliction of emotional distress; and
>
> **Claim Three**: State law violations of Wis. Stat. § 895.441.

ECF No. 29. On July 18, 2022, Plaintiff filed a motion to appoint counsel. ECF No. 32. On August 8, 2022, Plaintiff filed a motion for default judgment. ECF No. 34. On October 14, 2022, Defendant filed a motion to restrict document, ECF No. 43, and a motion to dismiss, ECF No. 44. Plaintiff has filed various motions following the motion to dismiss, including a motion to amend the complaint, a motion for reconsideration for the issuance of subpoenas, a motion for an extension of time, amotion not to dismiss case, a motion for summary judgment, a motion to remove

defendants, an additional motion to appoint counsel, a motion to stay the proceedings, and a motion to disregard. ECF Nos. 48, 49, 50, 54, 55, 56, 58, 59, 62.

First, the Court will deny the motion for default judgment. Plaintiff is proceeding pro se and the service in this case may understandably have been confusing. However, the record reflects that the U.S. Marshals Service served Defendant on September 23, 2022. ECF No. 40. Defendant appeared and timely filed a motion to dismiss within twenty-one days. *See* ECF Nos. 42, 44; Fed. R. Civ. P. 12(a)(4). As such, there is no default and the Court is therefore obliged to deny Plaintiff's motion. The Court now turns to Plaintiff's motion to appoint counsel. For the reasons explained below, the Court will grant Plaintiff's motion.

As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a

criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of pro se prisoner litigation in this District.[1] In 2010,

---

[1]Although non-prisoner pro se litigants may also be considered for the appointment of counsel under § 1915, the Court does not address that set of pro se

approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were § 1983 actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the volume of § 1983 lawsuits has skyrocketed. About 300 § 1983 actions were filed in 2014, and another 300 in 2015—each equal to the entirety of the District's civil prisoner filings from just four years earlier. In 2016, § 1983 actions numbered 385, in 2017 it ballooned to 498, and in 2018 it grew to 549. All told, well over a third of the District's new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent

---

litigants here for a few reasons. First, the volume of non-prisoner pro se litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of pro bono counsel, which they do with regularity.

Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g., Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff provides some evidence that he has attempted to secure counsel in this matter. He includes copies of the rejection letters from law firms that he received in response to his request. ECF No. 32-1. The Court is satisfied that Plaintiff has met the first *Pruitt* factor to attempt to secure counsel on his own.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down

categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has presented sufficient evidence and arguments showing that he cannot litigate or try this matter competently on his own. To begin, as Plaintiff intuits, a lawyer

Page 8 of 11
Case 2:22-cv-00406-JPS   Filed 11/02/22   Page 8 of 11   Document 63

would be helpful in navigating the legal system; however, Plaintiff's lack of legal training brings him in line with practically every other prisoner litigating in this Court. Further, the Court assists all pro se prisoner litigants by providing copies of the most pertinent federal and local procedural rules along with its scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Similarly, nearly all prisoner litigants face the challenge of being unable to fact-find and interview witnesses from prison.

However, Plaintiff raises several meritorious arguments. Significantly, Plaintiff presents evidence that he has only a middle school education and is currently on psychiatric medications for his ADHD disability; he indicates that his attention span prohibits him from completing any task that takes longer than fifteen minutes in the same day. It also appears that Plaintiff has been relying on fellow inmates to write and submit his submissions to the Court because he is unable to do so himself. ECF No. 32. Plaintiff's case currently presents complicated legal issues, including but not limited to possible statute of limitations tolling issues and whether Defendant can be considered a state actor for the purposes of § 1983. It also involves serious allegations of sexual assault. Taken together, the Court finds that the difficulty of the case exceeds Plaintiff's capacity to coherently present it. As such, the Court will accordingly grant Plaintiff's motion to appoint counsel. The Court will attempt to recruit counsel to litigate the case on Plaintiff's behalf, bearing in mind that there is no guarantee that the Court will be able to secure counsel for him.

As to the various pending motions, the Court will deny Defendant's pending motion to dismiss without prejudice, ECF No. 44, and will grant Plaintiff's motion to stay the proceedings, ECF No. 59, until counsel is

secured. The Court's screening order instructed Defendant to meet and confer prior to the filing of any motion to dismiss. ECF No. 29 at 13–14. There is no indication that this requirement was met, and the Court will therefore deny the motion without prejudice. The Court will stay this matter and provide Defendant the opportunity to either renew the motion to dismiss or file an answer upon the appointment of Plaintiff's counsel and their ability to meet and confer regarding the pending issues.

Similarly, the Court will deny without prejudice Plaintiff's motion to amend the complaint, motion for reconsideration, motion not to dismiss the case, motion for summary judgment, and motion to remove defendants, ECF Nos. 48, 49, 54, 55, 56, and will revisit these issues if and when necessary following the retention of Plaintiff's counsel. The Court will also deny as moot Plaintiff's motion for an extension of time, ECF No. 50, second motion to appoint counsel, ECF No. 58, and motion to disregard, ECF No. 62. Finally, the Court will reserve ruling on the Defendant's motion to restrict until Plaintiff's counsel is secured; the document shall remain sealed until the Court's decision.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 32, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the pro se staff attorneys of the Eastern District of Wisconsin are hereby directed to use their best efforts to secure counsel to represent Plaintiff in this matter. If counsel is secured, Plaintiff will be required to sign certain documentation agreeing to be represented by that counsel;

**IT IS FURTHER ORDERED** that Plaintiff's motion for default judgment, ECF No. 34, be and the same is hereby **DENIED**;

IT IS FURTHER ORDERED that Defendant's motion to dismiss, ECF No. 44, be and the same is hereby **DENIED without prejudice**;

IT IS FURTHER ORDERED that Plaintiff's motion to amend the complaint, ECF No. 48, motion for reconsideration, ECF No. 49, motion not to dismiss case, ECF No. 54, motion for summary judgment, ECF No. 55, and motion to remove defendants, ECF No. 56, be and the same are hereby **DENIED without prejudice**;

IT IS FURTHER ORDERED that Plaintiff's motion for an extension of time, ECF No. 50, Plaintiff's second motion to appoint counsel, ECF No. 58, and Plaintiff's motion to disregard, ECF No. 62, be and the same are hereby **DENIED as moot**; and

IT IS FURTHER ORDERED that Plaintiff's motion to stay the proceedings, ECF No. 59, be and the same is hereby **GRANTED**; this matter be and the same is hereby **STAYED** until further notice pending the appointment of Plaintiff's counsel.

Dated at Milwaukee, Wisconsin, this 2nd day of November, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge